## Commonwealth v. Flanigan

*David Swanson,* for appellant.

*William Morgan,* for Commonwealth.

WOLFE, P.J., March 27, 1973.—This is an appeal for violation of section 1002(b)(8) of The Vehicle Code of April 29, 1959, P.L. 58, 75 PS §1002.

Defendant was clocked by radar traveling 61 miles per hour in a 50 mile-per-hour speed zone on U. S. Route 6, an unlimited access highway. He does not seriously contest his rate of speed but argues he should be aquitted because the Secretary of Highways (Pennsylvania Department of Highways) lacks authority to establish the restricted speed zone through which defendant was clocked and, in the alternative, the official signs required by the act indicating the legal speed were not properly spaced.

Defendant, traveling west on said highway, had passed through a 40 mile-per-hour speed zone and had entered into the 50-mile-per-hour speed zone in question when he was stopped. At the termination of the 50-mile-per-hour zone is the commencement of a 60-mile-per-hour zone; hence, the zones permitted an increase of speed rather than a decrease in the direction of defendant's travel.

### Does the Secretary Have Authority to Establish the Restricted Speed Zone in Question?

Defendant argues section 1002(b)(6) establishes the general speed limit for all highways at 55 miles per hour for all vehicles except those otherwise restricted

by the act to lower speeds and section 1002(b)(8) was not intended by the legislature to authorize the secretary to lower the maximum speed below 55 miles per hour.

This section provides:

"The Secretary of Highways may, after due investigation, establish any speed limit on State highways where traffic conditions or other conditions of the highway make it safe to operate motor vehicles at the speeds other than as provided by this act."

Defendant's unique argument is founded in the rewriting of the Act of April 29, 1959, P.L. 58, sec. 1002, in that subsection (b)(8), as established in this act, permitted the secretary to establish "further restricted speed zones on State highways outside of business and resident districts where traffic conditions or other conditions of the highway make it unsafe to operate motor vehicles at the maximum speeds as provided by this act."

Defendant reasons the Act of August 23, 1961, P.L. 1118, changed the wording of paragraph (b)(8) so that it now reads the secretary is authorized to establish "*any* speed limit on State highways where traffic conditions or other conditions of the highway make it safe to operate motor vehicles at the speeds other than as provided by this act." (Italics supplied.)

Defendant concludes, therefore, since the conditions imposed upon the secretary that the speeds be "safe" and the words "restricted" and "unsafe" were removed from the prior act, it was the intention of the legislature to authorize the secretary to increase the speed limit above those otherwise established by the act, but was given no authorization to decrease it.

Defendant maintains subsection (b)(9) of section 1002 supports this contention because the secretary may establish certain speed zones with a 60-mile-an-

hour speed limit on State highways outside the business and residential districts where traffic conditions and other conditions make it safe to do so.

Although we acknowledge this is a unique novel argument, we cannot arrive at the same conclusion.

Section 1002, in the court's opinion, was intended by the legislature to first establish specific speed limits over which the secretary has no control to alter; and second, leaving within the discretion of the secretary to establish speeds where conditions of the highway make it safe to operate a motor vehicle at speeds other than provided by the act. This is the language used by subsection (b)(8) as well as subsection (b)(9); consequently, in exercising his discretion in the second instant the only restriction placed on the secretary, after due investigation, is to ascertain if traffic conditions or other conditions of the highway make it safe to operate at speeds *other than as provided by this act*: section (b)(8). (Italics supplied.) With no attempt to be facetious, we believe the secretary's option is a two-way street, that is, he may establish under subsection (b)(8) a slower speed or higher speed if not specifically provided by the act whereunder he has no option. The language of subsection (b)(8) says the secretary "... may ... establish any speed limit ..."

In our opinion, the legislature set certain maximum speeds and left other maximum speeds to the secretary's discretion if conditions permitted but this is not to say the secretary is prohibited from establishing lesser speed limits than those provided by the act. We do not think the interpretation of subsection (b)(8) lends itself to a common-sense conclusion by any other application. There is no specific 50-mile-per-hour speed limit established by legislature under section 1002. To adopt defendant's argument would mean the secretary has no authority to establish a 50-mile-per-

hour speed limit under any conditions. We appreciate that subsection (b)(8) must be read in relation to the other sections. However, this subsection should not be so read and interpreted that it lacks any efficiency per se. So too, we must consider subsection 1002(b) provides: "Subject to the provisions of subsection (a) of this section, speeds in *excess of the maximum limits* hereinafter provided shall be unlawful." (Italics supplied.) To adopt defendant's argument, this would mean the secretary could not establish any maximum speed in a particular area unless a direction in the act to authorize it.

We, therefore, conclude the language of subsection (b)(8) must be read in relation to the entire act but yet granting the secretary, at his option, the authority to establish any speed where traffic conditions on the highway make it safe to operate a motor vehicle provided that the speed so established does not contervene or violate the specific set speeds established by the legislature. In short, if the legislature has not preempted the maximum speeds, the secretary has an option to set the speed under subsection (b)(8). The legislature has placed the limitation on the maximum speeds only by subsection (b)(6) and has not spoken on lesser speeds.

## WAS THE HIGHWAY IN QUESTION PROPERLY POSTED?

Defendant argues that since the Commonwealth's evidence establishes the 50-mile-per-hour speed zone extends for a distance of one and three-fourths mile and there are only three signs erected for the extent of the entire distance, this concludes the Secretary has not complied with the mandate of section 1002(b)(8) that "Any such established speed limit shall be indicated by the erection of official signs, spaced not less

than one-eighth (⅛) of a mile apart, on the right-hand side of the highway facing the traffic to be controlled, and at the end of the speed zone there shall be an official sign indicating the end of such speed zone."

Defendant contends that if the admitted 50-mile-per-hour speed distance is 1.75 miles, it was incumbent upon the secretary, as the legislature intended, that signs be spaced at intervals of no greater than one-eighth of a mile, meaning eight signs to each mile spaced not less than one-eighth of a mile apart.

Conversely, does the language, "spaced not less than one-eighth (⅛) of a mile apart" mean the signs cannot be spaced at a greater distance than one-eighth (⅛) of a mile apart?

There was no evidence establishing the distance between the signs; however, the officer testified generally by land marks as to their location which would conclude they are spaced a substantial distance apart and not close together. Defendant presented no evidence to the contrary.

Section 1002 was designed to regulate the speed of different types of vehicles, taking into consideration the common law under subsection (a) as well as establishing specific maximum speeds as heretofore discussed.

The mandate that speed signs be erected is to afford reasonable notice to operators as they travel from one zone to another. Subsection (b)(4) providing for a 25, or 35 or 40-mile speed limit *within a business or resident district, or public park* areas requires an official sign placed one-eighth of a mile before the beginning of the indicated maximum speed and additional signs placed *at intervals not greater* than one-eighth of a mile. (Italics supplied.)

Subsection (b)(9) authorizes the secretary to establish a 60-mile-per-hour speed limit on State highways

which are *not within a business or residential district* if traffic conditions otherwise make it safe; however, official signs must be spaced *not less than* one-eighth of a mile apart.

Subsection (b)(8) uses similar language as subsection (b)(9) requiring the secretary to space the official signs *not less* than one-eighth of a mile apart.

Subsection (b)(8) and (b)(9) can be distinguished from subsection (b)(4) in that the latter speed limits are established *within* a business or residential district or a public park area whereas the former speed limits are *not within* the business or residential area.

In selecting the language for spacing the signs, we think the legislature intentionally used different language. If the signs are closely spaced together or spaced far apart, it would afford the operator to forget the speed limits if it is not brought to his attention at periodic intervals. There is more need for caution within a business or residential district and thus more regular warnings would be in order.

The mandate to space official signs not less than one eighth of a mile apart does not mean the signs cannot be placed at a further distance apart. The limitation goes to the minimum distance and not the maximum distance. We think this is a reasonable interpretation because a greater speed is permitted by the secretary in nonbusiness or nonresidential areas and thus the spacing of the signs need not be so frequent as in the business or residential areas. It does not appeal to our logic if the secretary is authorized to establish any speed limit on a State highway where traffic conditions make it safe to operate a motor vehicle at speeds, other than specifically provided by the act, the secretary would be compelled to erect signs every one-eighth of a mile.

Other lower courts have followed this interpretation

as noted in Purdon's Pennsylvania Statutes Annotated, 75 PS §1002, citing Commonwealth v. Wiener, 61 Luz. L. Reg. 263 (1971), holding that this action, as stated, provided that the "speed limit shall be indicated by the erection of official signs spaced not less than one-eighth (⅛) of a mile apart indicating that there *may* be a sign every one-eighth (⅛) of a mile, but no closer." (Italics supplied.)

Defendant recognizes his argument has been answered, at least indirectly, in Treadwell v. Commonwealth, 3 Comm. Ct. 221 (1971), wherein the court in holding section 1002(b)(8) constitutional, stated at page 223: "Treadwell contends that the above provision is unconstitutional because it is vague in requiring that signs be posted not less than one-eighth (⅛) of a mile apart. This, he contends, affords the Secretary 'untrammeled discretion' to post signs at *any* interval greater than one-eighth of a mile apart. Although the attack on the statute is described as one involving vagueness, we see nothing vague about the plain language of the section. The requirement that signs be posted 'not less than one-eighth (⅛) of a mile apart' is quite clear and plain in meaning. There is no vagueness which would affect the constitutionality.

"Neither do we agree that the statute affords the Secretary 'untrammeled discretion' to post signs at any interval greater than one-eighth of a mile. There is nothing in the statute which authorizes the Secretary to be unreasonable in the spacing of signs. It simply states that the signs shall not be less than one-eighth of a mile apart. We cannot read into the statute an unconstitutional authority which is not there."

Treadwell further concluded the intent of the statute was to give a fair warning to the motoring public.

In the instant case, we think the secretary has complied with the statute and has erected signs at reason-

able distances to give defendant fair notice of the posted speed.

We conclude the erection of three signs over a 1.75 of a mile distance is reasonably spaced, and, we find in this case, it sufficiently complies with the mandate of section 1002(b)(8). We must also agree with the Commonwealth that defendant was proceeding from a lower speed limit to a higher speed, thus he was in no way misled or taken by surprise by the change of the speed to his detriment.

For the foregoing reasons, we make the following:

## ORDER

And now, March 27, 1973, we find defendant guilty as charged and defendant is sentenced to pay a fine of $10 and costs of prosecution, and, in default of payment thereof, shall undergo imprisonment for not more than five days in the Warren County Jail.